## Gregg *versus* Gregg.

1. The common law required the owner to keep his cattle within his close, and their intrusion on another's possession was a trespass. This would be the rule in this state except for the Acts of Assembly imposing duties upon landowners other than those of the English common law.

2. The owner of improved lands must fence them, both to restrain his cattle and to shut out the roving cattle of his neighbors.

3. Unless improved lands are enclosed by a fence the owner is in default and cannot maintain trespass for damages by roving cattle.

4. The provision of the Act of 1700, that the owner of such cattle shall make good all damage to the owner of the enclosure, if it be fenced according to law, implies that without such fencing there is no such liability.

5. A recovery cannot be had in any case for damage which the negligence or misfeasance of plaintiff contributed to bring on himself.

6. Improved lands are required to be fenced, and when it is the duty of the landowner to fence his land, he cannot recover for damages by stray cattle while he neglects the duty.

7. Adams *v.* McKinney, Addison 258, and Dolph *v.* Ferris, 7 W. & S. 367, commented on.

March 9th 1868.　Before STRONG, READ, AGNEW and SHARSWOOD, JJ.　THOMPSON, C. J., at Nisi Prius.

Error to the Court of Common Pleas of *Wayne county*.

This was an action of trespass, *q. c. f.*, by Thomas Gregg against Nesbit Gregg, brought to December Term 1864, for injury done by the defendant's cattle in destroying the plaintiff's growing oats.

By agreement of the parties, the following special verdict was taken:—

"The jury find that the plaintiff had no fence around his field of growing oats, for its protection, it being open to a public road: that the defendant allowed his oxen to run at large, and that they entered the oat-field where there was no fence, and did damage to the plaintiff's oats to the amount of $5.

"If the court are of opinion that the plaintiff can maintain his action of trespass, under the state of facts, the jury find for plaintiff the sum of $5, with costs of suit. If the court should be of a contrary opinion, then they find for the defendant."

On this verdict the court (Barrett, P. J.) afterwards entered judgment for the defendant, which, on removal of the case by the plaintiff to the Supreme Court, was the error assigned.

*G. G. Waller*, for plaintiff in error, cited Dolph *v.* Ferris, 7 W. & S. 369; Paff *v.* Slack, 7 Barr 254; Goodman *v.* Gay, 3 Harris 188; Thayer *v.* Arnold, 4 Metc. 589; Adams *v.* McKinney, Add. 258.

In the Supreme Court no one appeared for the defendant in error and there was no paper-book submitted.

[Gregg *v.* Gregg.]

The opinion of the court was delivered, May 7th 1868, by

STRONG, J.—The common law required every man to keep his cattle within his own close, and treated every intrusion by them upon another's possession as a trespass. This was a general rule, and so it would doubtless be with us were it not for the operation of our Act of Assembly. True, it has been said a man may suffer his cattle to run at large without incurring any liability for their entry upon unenclosed woodland or waste fields. This is because the damages done are inappreciable, and therefore not to be noticed, or, as was suggested in Knight *v.* Abert, 6 Barr 472, because it is better to treat waste lands as common without stint to prevent vexatious litigation. It is not because such an entry is not at law a trespass. And when the cattle of one man stray upon the cultivated or improved land of another, it is not to be doubted that an action of trespass might be maintained for the intrusion, if our statutes had not imposed upon landowners duties other than those required by the common law of England.

But at an early date changes were made by statutory enactment. The Act of 1700 (1 Sm. L. 13) enacted that, for preventing all disputes and differences that may arise through the neglect or insufficiency of fences, " all corn-lands and grounds kept for enclosures within the said province and counties annexed shall be liable to make good all damages sustained thereby to the owners of said cattle." * * * " But if any horse, kine, sheep, hogs or goats, or any kind of cattle, shall break into any man's enclosure, the fence being of the aforesaid height and sufficiency * * * then the owner of such cattle shall be liable to make good all damages to the owner of the enclosure, for the first offence single damages, and ever after double damages sustained. And any person having any unruly horses, mares or cattle that are not kept off by such fences as aforesaid, are ordered and shall be obliged to take effectual care to restrain the same from trespassing on their neighbors' enclosures." Some of the provisions of this section were subsequently changed by the Act of 1729, and others still later. Thus, the required height of the fences was reduced. The requisition that they should be close at the bottom was taken away. New arrangements respecting swine were made, and the provisions relative to fence-viewers were altered. So new enactments have been made in regard to partition fences ; but the remainder of the Act of 1700 is still in force. The owner of improved lands, or as they are called, corn lands and grounds kept for enclosures, must fence them. And this not solely for the purpose of restraining the cattle of the owner of the land. It is to shut out the roving cattle of his neighbors. This is made plain by three distinct provisions of the section. Thus, the owner of such lands may not drive off estrays violently, so as to hurt them, unless his grounds are fenced, but if fenced he may recover all damages caused by roving cattle.

[Gregg v. Gregg.]

And again, owners of unruly cattle not to be kept off by such fences are required to take effectual care to restrain them from trespassing. The owner of improved lands, then, is in default, unless they are enclosed by a fence. How then can he maintain trespass to recover damages for the incursions of roving cattle? The affirmative provision of the act, that the owner of such cattle shall be liable to make good all damages to the owner of the enclosure, if it be fenced according to law, implies that, without such fencing, there is no such liability. And I do not find that it had ever been held, since the passage of the Act of 1790, that trespass will lie for the entry of cattle upon improved lands not fenced. In Adams v. McKinney, Add. 258, it was maintained against the owner of breachy or unruly horses. But there was a fence around the close, and the owner of the horses had thrown it down and turned them into the close. In Dolph v. Ferris, 7 W. & S. 367, the question was, whether trespass would lie against the owner of a bull that had jumped into an enclosure of the plaintiff and had gored a horse so that he died. It was held that it would lie. In his opinion, Judge Kennedy stated the general rule of the common law, but gave no intimation of what the law of the case would have been had there been no fence around the plaintiff's land. The question was whether the action should have been trespass or case. The question here is, whether one who leaves his improved land open and unprotected by any fence against the incursions of wandering cattle of others can recover compensation for damages caused by the incursions of such cattle, and, in determining it, the duty of the landowner is all-important. Though generally in England a man is not bound to fence his land against the cattle of others, yet he is sometimes by prescription. When he is thus bound he cannot recover for damages done by the cattle of his neighbor, if the fence be insufficient. This is an exception to the general rule of the common law. It is an excuse of a trespass that the fences which the plaintiff was bound to repair were defective: Coke Litt. 283; 1 Chit. Plead. 440; 19 Hen. 8, 6 a; 2 Rolle Abr. 565, 10 ed. 4, 7 b. The doctrine of these authorities is, that a defendant may plead that the plaintiff by prescription ought to repair the fences between the closes of the plaintiff and defendant, and that for want of such repair his cattle escaped and did the damage alleged, or that the plaintiff ought to repair the fences between his close and the highway, and for want thereof the cattle escaped out of the highway or between his close and where the defendant has common. See Comyns' Dig. *Pleader*, 3, M. 29. In 3 Chit. Plead. 1103, there is a form of such a plea to a declaration in trespass by cattle, taken from older precedents, fully sustained by the authorities to which reference is made in the notes. The same rule has been generally adopted in this

[Gregg *v.* Gregg.]

country. In many of the states there are statutes requiring landowners to fence their property, and wherever this duty is required, it is held that there can be no recovery for damage done by stray cattle upon the lands, if the duty has been neglected. In Coldren *v.* Eldred, 15 Johns. 220, it seems to have been recognised, if not ruled, that in an action for trespass by cattle, it is matter of defence, and to be shown by the defendant, that the fence which the plaintiff was bound to keep in repair was defective. In Shepherd *v.* Hees, 12 Johns. 433, it was decided that if a defendant's hogs go into the adjoining land of the plaintiff through an insufficient fence which the plaintiff is bound to repair, no action of trespass can be maintained. In Tonawanda Railroad Co. *v.* Menger, 5 Denio, it was said by Beardsley, J., that where the duty to build fences exists and had been violated, the law will give no redress to the party in fault for damages sustained by him in consequence of a defect in that part of the fence he was bound to repair; that the statute of New York merely affirmed a well-settled principle of the common law forbidding a recovery in any case for damages which the negligence or misfeasance of the party complaining contributed to bring upon himself. Such also is the doctrine asserted in Page *v.* Olcott, 13 N. H. 399, in Walker *v.* Watrous, 8 Ala. 493, in Studwell *v.* Rich, 14 Conn. 292, in 17 Cal. 308, and in other cases at hand. It is recognised, though not ruled, in the leading case of Rust *v.* Low, 6 Mass. 90, and it is undoubtedly the general American doctrine. It may operate harshly in individual cases, but not more so in the wilder and unsettled portions of the state than in those which have long been cultivated.

Our statute was made when all our land was new, when it was more difficult to fence it than now. It was more convenient to enclose cultivated fields than pastures. The lands ploughed and planted were of comparatively small extent, while the cattle were suffered to roam through unenclosed woodlands and obtain pasturage there. These considerations may have induced the passage of the enactment of 1700. It is useless, however, to speculate upon this. It is enough that improved lands are required to be fenced, and that it is the law, that when it is the duty of a landowner to fence his land, he cannot recover compensation for damage done upon it by stray cattle, so long as his duty is neglected.

The judgment given upon the special verdict was therefore correct.

Judgment affirmed.