SAMUEL JAMES *vs.* WILLIAM TIBBETTS.

*Fence-viewers. Partition fence.*

The time limited by fence-viewers within which each adjacent owner shall build his part of the partition fence must be definitely fixed.

A recital in the written assignment that a certain owner named shall build the portion of fence assigned to him 'within twelve days from the date of receiving notice of this assignment,' is not sufficiently definite.

And parol testimony is not competent to remedy the defect in this particular.

To give any person a statute right to a partition fence, the land of the adjacent owner must be inclosed or improved.

And the fact that a part of the land of the adjacent owner is improved does not require him to maintain any part of a partition fence along that part which is not improved.

Fence-viewers have no authority to determine the right of adjacent owners to a partition fence.

ON REPORT.

CASE to recover double the value of thirty-eight rods of partition fence assigned to the defendant by the fence-viewers, and upon his neglect to build the same, built by the plaintiff, with the fees of the fence-viewers and interest at the rate of one per cent a month, under R. S., c. 22, § 4.

The court to enter the legal judgment.

The case is stated in the opinion.

*J. H. Webster*, for the plaintiff.

*S. D. Lindsey*, for the defendant.

DANFORTH, J. To sustain his action, the plaintiff offers in evidence a division of the line fence by fence-viewers, between the defendant and himself, dated July 24, 1869, made under R. S. of 1857, c. 22, § 5. To this several objections are made, among others that there is no definite time allowed the defendant in which to build that part of the fence assigned to him. The section referred to requires the fence-viewers in writing to assign to each his share

thereof, ' and limit the time in which each shall build or repair his part of the fence, not exceeding thirty days.' It is evident that this provision as to time must be strictly complied with, in order to lay the foundation of an action of this kind. The time limited must be definite, and as it is required to be in writing, parol testimony would not be admissible to remedy any defect in this particular. *Abbott* v. *Wood,* 22 Maine, 546.

The paper offered shows the part of the fence set out to each party, adjudges a portion of it to be sufficient, and provides ' that said Tibbetts shall, within twelve days from the date of receiving notice of this assignment, build such a fence on the other part of said line,' etc. It will readily be seen that from this paper alone, and we have no other writing in relation to this point, we are unable to determine the commencement of the twelve days. This can only be done by the aid of parol testimony. Even if we hold him bound to take notice on the date of the record, it would not render the time definite. As the law fixes no period for the record, the time would be longer or shorter, as that date might be sooner or later, and the thirty days might expire before notice given.

This is a fatal defect in the foundation of the action, and one which cannot be remedied if the report should be discharged.

· But there is another objection to the maintenance of this action, which goes to the merits of the case, independent of any error or want of error in the proceedings of the fence-viewers. Is the defendant under any legal obligation to build any part of the fence on the line in question?

It appears from the report that the parties were, at the time of this division, owners of two adjacent farms, bounded on the west by a town road. How far the land extends back from the road does not appear. The whole line was not divided by the fence-viewers, but only one hundred and fifty rods running from the road. The fence in controversy is the thirty-eight rods farthest from the road, and commences at a rock. The plaintiff occupies his land adjacent to this fence as a pasture, and beyond the pasture is bog and woodland. The defendant improved his land up to a point about seven-

teen rods west of the rock. The remainder, including that adjacent to the disputed fence, is woodland not under cultivation, and never has been, nor was it inclosed with fences, so far as the testimony shows. The small plan attached to plaintiff's argument appears to be correct.

The question of prescription is not raised here, but the plaintiff's counsel, in a very ingenious argument, rests the defendant's obligation to assist in maintaining this division fence upon two grounds, the assignment and R. S. of 1857, c. 22, § 5. He contends that the adjudication of the fence-viewers upon this point is conclusive.

There need be no question as to the binding effect of the judgment of the fence-viewers in any matter submitted to them by the law. But as all their powers are conferred upon them by statute, their adjudication beyond the matters for their consideration therein found can have no force whatever. Under the statute so far as it relates to this question, the only duty imposed upon the fence-viewers, is to assign to each party his share in partition fences about which disagreement has arisen, and limit the time in which such fence shall be built. Whether or not the parties, or either of them, are entitled to a partition fence to be supported equally, is a matter which the fence-viewers are not called upon to consider, but must be settled, in the absence of any agreement or right by prescription, by the provisions of the statute applicable to the facts of each case. *Longley* v. *Hilton*, 34 Maine, 332.

Nor does § 5, under which the proceedings in this case were had, determine the right of either party to a division of the fence. Such was not the purpose of the legislature in enacting it. The sole object of this section is to establish a method of proceeding by which a duty already existing may be legally divided, so that each may know the part he is to perform. Unless there is a legal right to a partition fence already existing, this section is not applicable, and the tribunal established by it have no duties to perform. In such a case there would be no ' rights in partition fences, and their obligations to maintain them,' respecting which to disagree. We must, then, look to some other part of the statute to ascertain the extent

of this right and this obligation, and we shall find it plainly set out in § 2 : ' The occupants of lands inclosed with fences shall maintain partition fences, . . . in equal shares, while both parties continue to improve them.'

By § 10, a party ceasing to improve, or laying open his inclosure, though he may not take away his partition fence if the adjacent owner will purchase, is no longer under any obligation to support such fence.

Sect. 11 recognizes the same limitation, that only when the owner or occupant begins to improve his land, his liability to support a partition fence begins.   Sect. 13 is to the same effect.

Owners of improved lands must maintain fences according to a legal division, but by giving notice as therein required, shall not be required to maintain such fence while his lands so lie common and unimproved.'   It would seem to be clear that to give any party a statute right to a partition fence, the land of the adjacent owner must be either inclosed with fences or improved.   The land of the defendant adjacent to the fence in controversy was at the time of the division neither inclosed nor improved.   Nor does it change the fact that at some distance away, and adjacent to another part of the same line, it adjoins a piece that is cultivated.   This still remains in the same condition as though it were not thus joined. As held in *Abbott* v. *Wood,* before cited, the statute is penal as well as remedial, and must be strictly construed.

If this construction is 'hard for the plaintiff it is only so because he owns land adjacent to other land unimproved, and in such case the law gives him no assistance in building his line fence.

*Judgment for defendant.*

APPLETON, C. J.; KENT, WALTON, and DICKERSON, JJ., concurred.