# G. B. STEWART v. JACOB BENNINGER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF CLARION COUNTY.

Argued October 7, 1890—Decided January 5, 1891.
[To be reported.]

1. The owner of swine, who permits them to run at large without rings and yokes, in violation of the provisions of the act of 1705, 1 Sm. L. 70, is liable in an action of trespass for depredations committed by them upon the enclosure of another, irrespective of the character of the fences surrounding such enclosure.

2. The act of March 27, 1784, 2 Sm. L. 96, for the regulation of fences and the encouragement of the raising of swine in the counties of Bedford, Northumberland, Westmoreland, Washington and Fayette, was totally repealed by § 2, act of April 11, 1862, P. L. 496, and is no longer operative within the state.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 46 October Term 1890, Sup. Ct.; court below, No. 174 January Term 1888, C. P.

On December 27, 1887, an appeal was entered by the defendant from the judgment of a justice of the peace, in an action brought by G. B. Stewart against Jacob Benninger, to recover damages for injuries committed to property of the plaintiff by trespassing swine belonging to the defendant. Issue.

At the trial on January 18, 1890, the following facts were shown: The plaintiff and the defendant were the owners of adjoining farms in Toby township, Clarion county. The defendant owned and kept a lot of swine which were suffered by him to run at large, without rings and yokes, upon a public road passing through the plaintiff's farm. At different times in the years 1885, 1886 and 1887, the swine broke through the enclosures of the plaintiff's premises and committed various depredations thereon. Testimony for the plaintiff tended to prove that the defendant had been notified of the predatory habits of his hogs, and had been requested by and on behalf of the plaintiff to shut them up, but refused to do so.

### Statement of Facts.

Clarion county was created on March 11, 1839, out of parts of Venango and Armstrong counties, Toby township, being in that part of it taken from Armstrong. Armstrong county, at its organization in 1800, was formed of parts of Allegheny, Westmoreland and Lycoming counties. Lycoming county, organized by act of April 13, 1796, was a part of Northumberland county at the time of the passage of the act of March 27, 1784, 2 Sm. L. 96, which required that all fences in the counties of Bedford, Northumberland, Westmoreland, Washington and Fayette, should be "four feet and a half high with sufficient stakes and riders added thereon, and that the under rail in each panel shall not exceed five inches from the surface of the ground, and the first four rails in each panel shall not exceed five inches wide between the rails," and made provision for the impounding of swine, and the recovery of damages from their owner, in case of their trespassing "through or over any lawful fence."

The defendant having taken the stand as a witness on his own behalf, his counsel made the following offer:

We propose to prove by this witness that the fences enclosing the several fields for which the plaintiff claims damage, by reason of injury and various trespasses on the part of the defendant's hogs, were wholly insufficient, in some places not more than two feet or two and a half high, along the public highway; and in other places, where the fences were of sufficient height, they were fatally defective at the bottom, and in some parts of these fences there were holes large enough to let the largest hogs in that neighborhood enter and re-enter without any inconvenience.

Objected to as incompetent, for the reason that there is now no law in force in Pennsylvania, applicable to Clarion county, which requries one man to fence against the hogs of another.

By the court: Objection sustained; exception.[1]

After receiving a charge from the court, WILSON, P. J., the jury returned a verdict in favor of the plaintiff for $24.51. Judgment having been entered, the defendant took this appeal, assigning for error:

1. The refusal of defendant's offer.[1]

*Mr. M. A. K. Weidner*, for the appellant:

Arguments.

The act of March 7, 1800, 3 Sm. L. 417, repealed the act of March 27, 1784, 2 Sm. L. 96, as to the then limits of Northumberland county. As the territory of Clarion county, which had formerly been a part of Northumberland, was taken from Northumberland in 1796 and in 1800 formed a part of Lycoming, the repeal did not affect that territory. The act of 1784 was never repealed as to Lycoming, while Clarion formed a part thereof. Nor has any repealing statute been passed as to Armstrong or Clarion counties, since the territory was taken out of Lycoming. The act of 1784, therefore, remains in full force as to Clarion, and the plaintiff, not having maintained such fences as the act prescribes, cannot recover damages for the trespassing of swine upon his property: Gregg v. Gregg, 55 Pa. 227. The testimony which was rejected by the court was therefore competent and should have been received.

*Mr. John W. Reed* (with him *Mr. Harry R. Wilson*), for the appellee:

The act of March 27, 1784, 2 Sm. L. 96, was repealed by § 2, act of April 11, 1862, P. L. 496, as to all the territory to which it applied at the time of its passage: Arthurs v. Chatfield, 21 Pittsb. L. J. 53 [?]. This brought swine in Clarion county under the rules of the common law, those animals being expressly excluded from the general fence law of 1700, 1 Sm. L. 13. The defendant, therefore, was bound to restrain his hogs, or answer in damages for their intrusions upon the lands of another: Gregg v. Gregg, 55 Pa. 227. The common-law remedy by action of trespass is not repealed by any fence or stray law in force: Mitchell v. Wolf, 46 Pa. 147. The plaintiff's lands were enclosed and the defendant's hogs were breachy. Having knowledge of their depredations, and having been notified to shut them up, the defendant neglected and refused to do so. Hence the sufficiency of the plaintiff's fences was immaterial, even under the principles laid down in Adams v. McKinney, Add. 258, and Dolph v. Ferris, 7 W. & S. 367, and recognized in Gregg v. Gregg, 55 Pa. 229. Moreover, the defendant did not propose to show that the hogs went in at the holes mentioned in the offer, or that the fences were insufficient at the places where they broke in.

OPINION, MR. CHIEF JUSTICE PAXSON:

According to the statement of the plaintiff the defendant kept a very voracious set of hogs. They were suffered to run at large without rings or yokes. " They were of the slab-sided, long-snooted breed, against whose daily and nocturnal visits there is no barrier. They were of an exceedingly rapacious nature, and six of them, at one sitting, devoured fifty pounds of paint, thirty gallons of soft soap, four bushels of apples, and five bushels of potatoes, the property of the plaintiff. They raided the plaintiff's spring-house, upset his milk-crocks, and wallowed in his spring; and for several years foraged upon his farm, having resort to his corn, potatoes, rye, and oat crops, to his garden, and to his orchard and meadow. They obtained an entrance by rooting out his fence chunks, and going under, or by throwing down the fences, or by working the combination on the gate. These hogs were breachy, and the plaintiff notified the defendant, several times, to shut them up, and the last time told him if he did not shut them up he would; and the defendant replied, 'Shut them up and be damned.'"

It may be this statement is exaggerated, yet the jury have found that they were troublesome hogs, and were without rings and yokes. That they did the plaintiff some damage is not disputed; but the defendant contends that the plaintiff was not entitled to recover anything for such damage, for the reason that he did not keep up proper fences. · We are unable to see what the question of fences has to do with the case. The act of 1705, 1 Sm. L. 70, expressly provides that "no swine shall be permitted to run at large without rings and yokes, under the penalty of forfeiting half the value thereof, . . . . Therefore, if any person or persons shall find on his, her or their lands, . . . . any swine, hog or hogs, shoat or shoats, or pigs, without rings in their noses, sufficient to prevent their turning up the ground, and triangular or three-cornered yokes or bows about their necks, and to extend at least six inches from the angular point or corner, sufficient to keep them from breaking through fences, it shall and may be lawful for him, her, or them, all such swine, hogs, shoats or pigs, to kill and take, and drive and carry away," etc. We need not recite further the provisions of this act. It was not alleged that the defendant's hogs had either rings in their noses, or yokes on their necks, as required by the act of 1705.

Opinion of the Court.

It was alleged, however, that the act of March 27, 1784, 2 Sm. L. 96, entitled " An Act to regulate fences, and to appoint appraisers in each township in the counties of Bedford, Northumberland, Westmoreland, Washington, and Fayette, and to encourage the raising of swine," covers this case; that it applies to the territory which was the scene of the raid of defendant's hogs upon the premises and property of the plaintiff; and that under the provisions of said act plaintiff's fences were insufficient. I find, however, that this act was repealed by its title by the act of April 11, 1862, P. L. 496. It follows, necessarily, that the act of 1784 can have no bearing upon the case. It is not easy to trace through one hundred fifty years all the legislation bearing upon this question, but, as no legislation now in force has been called to our attention which legalizes the running at large of hogs without yokes and rings, we may fairly presume it does not exist. And if an act can be found which justified such a thing, in the early days of the province when much of the country was a wilderness, it would be so far inapplicable to the present condition of things that I have little doubt the legislature would promptly repeal it. Yet, if such an act was in force and called to our attention, it would be our plain duty to sustain it, however objectionable it might appear to us. It is hard to imagine a more unneighborly act than permitting a lot of mischievous hogs to run at large. The defendant has shown us no statute which justifies him in doing this. No such right exists at common law: Gregg v. Gregg, 55 Pa. 227. The common-law remedy by an action of trepass is not repealed by the stray laws in force in this state: Mitchell v. Wolf, 46 Pa. 147. The opinion of Chief Justice LOWRIE, in the case last cited, is an interesting review of the legislation of this state in relation to swine.

Judgment affirmed.