SUSIE M. CAREY, Defendant Below Appellant, *vs.* GEORGE R. SCHWEITZER, Plaintiff Below Respondent.

(*April* 28, 1926.)

HARRINGTON and RICHARDS, J. J., sitting.

*Howard E. Lynch, Jr.*, for Defendant Below Appellant.

*John B. Hutton* for Plaintiff Below Respondent.

Superior Court for Kent County, April Term, 1926.
(No. 1, February term, 1926)

HARRINGTON, J., delivering the opinion of the court:

Subject to an exception under certain circumstances, with respect to cattle being lawfully and properly driven on the public highway (*Minor & Wurtz on Real Property*, 117; *3 C. J.* 133, § 403; *Erdman v. Gottshall*, 9 *Pa. Super. St.* 295), which exception need not be considered here, the common-law rule required every person, by fences or otherwise, to keep his cattle on his own premises, and if they strayed upon his neighbor's lands, they were trespassers and the owner was liable. *3 C. J.* 125, § 393; *Minor & Wurtz on Real Property*, 116, 117; *Vandegrift v. Delaware R. R. Co.*, 2 *Houst.* 287; *Barber v. Mensach*, 157 *Pa.* 390, 27 *A.* 708; *Lyons v. Merrick*, 105 *Mass.* 71; *Erdman v. Gottshall*, 9 *Pa. Super. Ct.* 295.

This rule naturally applied, whether the lands trespassed upon were fenced or not. *3 C. J.* 125, § 393; *Stewart v. Benninger*, 138 *Pa.* 437, 21 *A.* 159.

Considering the rule above stated, it also necessarily followed that there was no rule at common law requiring adjoining owners of land to share in the costs of erecting or maintaining partition fences. 25 *C. J.* 1018, § 4; *3 C. J.* 130, § 400; *Barber v. Mensch*, 157 *Pa.* 390, 27 *A.* 708; *Rust v. Low*, 6 *Mass.* 90; *Moore v. Levert*, 24 *Ala.* 310.

This rule could, however, be changed by express agreement or by prescription. 25 *C. J.* 1017, 1018, §§ 4 and 6; *3 C. J.* 130, § 400;

*Bronson v. Coffin*, 108 *Mass.* 175, 11 *Am. Rep.* 335; *Thayer v. Arnold*, 4 *Metc.* (*Mass.*) 589; *Rust v. Low*, 6 *Mass.* 90; *Heath v. Ricker*, 2 *Greenl.* (*Me.*) 72; *Star v. Rookesby*, 91 *Eng. Rep.* 295.

Because of the conditions existing in a new country where there were few farms, the cultivated lands consisting mainly of small plots, and where cattle were generally permitted to roam through the uninclosed woodlands (*Painter v. Reece*, 2 *Pa.* 126), the rules, with respect to fencing, were, however, regulated by statute, at a very early date, in many of the states of this country, including the state of Delaware. The Delaware statute governing this subject is embraced within *Chapter* 103, *Rev. Code* 1915. The question before us, therefore, depends upon the construction of that statute.

*Section* 3624 of this chapter defines a lawful fence, and further provides that:

"Barbed wire shall not be used for division fences except by the mutual consent of the owners of the properties divided by such fences."

*Section* 3626 provides for the appointment of fence viewers "who shall be the sole judges of the sufficiency of any fences, of the charges of making or repairing partition, or other fences, and how borne," etc.

*Section* 3627 provides that:

"The respective occupants of lands inclosed by fences, shall maintain partition fences between them in equal shares, so long as both parties continue to improve the same.

"Where any person shall inclose land adjoining another's enclosed land, so that any part of the fence, or fence and ditch, or hedge and ditch, or wall, already made, becomes a partition fence, the fence viewers shall determine what sum shall be paid by the one to the other; and the fence shall then be maintained by the parties equally."

*Section* 3628 provides for the procedure "if the fence viewers judge any fence to be insufficient."

*Section* 3630 provides that:

"All sums awarded by fence viewers, or directed by them to be paid, may be recovered as other debts of like amount are recoverable."

While it appears that an earlier act applying to the province of Pennsylvania, including what were then known as the three

lower counties on the Delaware, and which now constitute the state of Delaware, was passed by the Pennsylvania General Assembly in the year 1700 (*Painter v. Reece*, 2 *Pa.* 126; *Gregg v. Gregg*, 55 *Pa.* 227; *Barber v. Mensch*, 157 *Pa.* 390, 27 *A.* 708), the earliest act relating to this subject, appearing on our statute books, was enacted during the thirteenth year of the reign of George II. *Chapter* 70A, *Volume* I, Laws of Delaware, page 180. A supplement to this act was subsequently enacted in the year 1770, during the ninth year of the reign of George III. *Chapter* 198, *Volume* 1, Laws of Delaware, *Page* 451.

It was expressly provided in this supplementary act that it should only be effective for the period of three years, but it was made permanent in the year 1773, during the twelfth year of the reign of George III. *Chapter* 215A, *Volume* 1, Laws of Delaware, *Page* 523.

*Section* 1 *of Chapter* 70A, *Volume* 1, Laws of Delaware, *Page* 180, provided:

"That corn fields and ground kept for inclosures shall be fenced" in a certain specified manner.

*Section* 1 of the earlier Pennsylvania act apparently contained a similar provision. *Gregg v. Gregg*, 55 *Pa.* 227.

*Section* 3 of the Delaware act also provided:

"That where any person * * * shall inclose any land adjoining to another's land already *inclosed with a fence*, so that any part of the fence first made become the partition between them, in such case the charge of such division fence, *so far as inclosed on both sides*, shall be equally borne and maintained by both parties," etc.

In this respect it materially differed from the earlier Pennsylvania act which covered adjacent improved, as well as adjacent inclosed, lands. *Painter v. Reece*, 2 *Pa.* 126.

*Section* 1 *of Chapter* 198A, *vol.* 1, Laws of Delaware, *Page* 451, the supplementary act above referred to, provided that certain ditches, hedges, or stone walls inclosing lands should also be deemed and taken to be lawful fences.

*Section* 3 of the same act also provided:

"That where any person or persons have already inclosed, or shall hereafter inclose any land with a fence and ditch, or hedge and ditch of the height

and sufficiency aforesaid, and so declared and determined by the fence viewers, and the same fence and ditch, or hedge and ditch, or any part thereof, are or may become a partition between them and any other person or persons having improved or inclosed lands adjoining the same, in such case the charge of such division fence and ditch, or hedge and ditch, so far as is improved or inclosed on both sides, shall be equally borne, repaired and maintained by both parties.  *  *  *"

The same section then further provided:

"And that where any stone wall of the height and sufficiency aforesaid is, or shall be erected, on the line between any two persons having lands improved or inclosed adjoining thereto, by, or at the expense of any one of them, the person or persons having so erected such wall, may and shall apply to the fence viewers of the hundred where the same is so erected, who are thereupon authorized, empowered and required to fix and determine the charge or expense of making a good and sufficient fence of posts and rails of the length of such wall, and of maintaining and repairing the same annually thereafter  *  *  * and the owner or possessor of the land improved or inclosed and adjoining such partition wall shall be liable to pay to the person or persons erecting the same the moiety of the sum which a fence of posts and rails, as aforesaid would in such their opinion cost," etc.

Both the original and supplementary acts above referred to, as well as an additional supplementary act passed in 1804, which had no bearing on the question before us, were re-enacted in the Code of 1829 and appear in that Code at pages 269 to 271, inclusive. So far as we are able to find, with the exception of some slight changes in the provisions as to what constituted a lawful fence in Sussex county, made by *Chapter* 143, *Volume* 10, Laws of Delaware, the material statutory provisions, with respect to fences, remained the same until the enactment of the Code of 1852. This Code was passed upon by the Legislature section by section, and with the exception of the barbed wire clause appearing in *Section* 3624 of the present Code, which was inserted later, enacted the statute as it now appears.

Substantial changes in the preceding statutory provisions were, however, made by that Code, so that it is not necessary to consider the meaning of *Section* 3 of the supplementary act of 1770.

One change made by it consisted in the omission of the provision appearing in the original act requiring the fencing of corn lands and lands kept for inclosures. This change made it no longer necessary for the owner or occupant of land to fence against his

neighbor's stock, and except as to partition fences restored the original common-law rule. *Erdman v. Gottshall,* 9 *Pa. Super. Ct.* 295; *Barber v. Mensch,* 157 *Pa.* 390, 27 *A.* 708.

Another change consisted in the insertion of the first clause of what is now designated as *Section* 3627, *Revised Code* 1915. As we have already seen, this clause is as follows:

"The respective occupants of lands inclosed by fences, shall maintain partition fences between them in equal shares, so long as both parties continue to improve the same."

Still another change consisted in the omission of practically all of the general provisions of *Section* 3, *Chapter* 198A, *Volume* 1, Laws of Delaware, *Page* 451, and the substantial adoption of the language of *Section* 3 of *Chapter* 70A, *Volume* 1, Laws of Delaware, *Page* 180, as above quoted; though its provisions, as to partition fences, were also made applicable to fences and ditches, hedges and ditches, or walls.

The first clause of 3627, *Revised Code* 1915, is one of the clauses in controversy. The second clause of this section provides in unambiguous terms for an apportionment of the original cost and subsequent maintenance of a partition fence, wall, etc., where land has been inclosed and "any persons" shall subsequently inclose adjoining land, using the partition fence, wall, etc., in part for that purpose.

The first clause inserted in 1852, while apparently confined to the occupants of adjoining lands, is perfectly consistent with this provision. It provides that the respective "occupants" of lands "inclosed by fences" shall maintain partition fences between them, etc.

It is true that it also contains a limitation that this obligation shall exist only "so long as both parties shall continue to improve the same," referring to the inclosed lands, but this does not affect the requirement that for the statute to apply at all the lands of both parties must be inclosed. *Lantis v. Reithmiller,* 95 *Mich.* 45, 54 *N. W.* 713; *Fay v. Elliott,* 154 *Mass.* 587, 28 *N. E.* 1052; *Bechtel v. Neilson,* 19 *Wis.* 59; *Kent v. Lix,* 47 *Mo. App.* 567; *Alma Coal Co. v. Cozad,* 79 *Ohio St.* 348, 87 *N. E.* 172, 20 *L. R. A.* (*N. S.*) 1092; 25 *C. J.* 1021.

The apparent reason for the enactment of partition fence statutes was the mutual benefit derived therefrom by the adjoining owners or occupants of adjacent lands. *Painter v. Reece*, 2 *Pa.* 126; *Lantis v. Reithmiller*, 95 *Mich.* 45, 54 *N. W.* 713; *Jones v. Perry*, 50 *N. H.* 134; 25 *C. J.* 1021.

In *Lantis v. Reithmiller*, *supra*, the court in construing a similar statute, said:

"By its express terms, it applies only to land inclosed by fences. The uniform construction of such statutes has been to limit their application to inclosed lands. If a landowner chooses not to occupy that portion of his land adjoining his neighbor, or does not care to inclose it for his own purposes, the law does not compel him to do it for another."

The language of these statutes and the conditions upon which they are applicable, however, materially differ. There are many states where the erection or maintenance of a partition fence is required if the adjoining lands are improved. 25 *C. J.* 1021; *Painter v. Reece*, 2 *Pa.* 126.

Our statute, like many others, however, contains no such provision. But where such provisions do appear, the following cases showing the strictness with which the statute is applied, are of interest: *Painter v. Reece*, 2 *Pa.* 126; *Gregg v. Gregg*, 55 *Pa.* 227; *Rohrer v. Rohrer*, 18 *Pa.* 367; *Smith v. Johnson*, 76 *Pa.* 191; *Palmer v. Silverthorn*, 32 *Pa.* 65.

Considering the language of our statute, we are unable to find any support for the contention of the plaintiff below that "inclosed by fences" merely means improved lands, or that if the lands in question were once inclosed there was an obligation on the part of the defendant below to continue to maintain a partition fence between them, whether they were still inclosed when the statute was invoked or not.

Neither *James v. Tibbetts*, 60 *Me.* 557, *Jones v. Perry*, 50 *N. H.* 134, *Scofield v. Haire*, 122 *Mich.* 265, 80 *N. W.* 1091, nor *Boenig v. Hornberg*, 24 *Minn.* 307, cited by the plaintiff below, are inconsistent with the conclusion reached by us, as the statutes involved in those cases materially differ from the statute we are asked to construe.

█  It probably is true, as is contended by the plaintiff below (*Adams v. Van Alstyne*, 25 *N. Y.* 232; *Rust v. Low*, 6 *Mass.* 90; *Castmer v. Riegel*, 54 *N. J. Law*, 499, 24*A*. 484; *James v. Tibbetts*, 60 *Me.* 557; *Binny v. Hull*, 5 *Pick.* [*Mass.*] 503; 25 *C. J.* 1018), that adjoining owners may acquire a prescriptive right to the maintenance of a partition fence, notwithstanding a statute relating to such fences, but it is likewise true that this principle can have no application where the proceeding is not based on prescription, but is under the statute.

█  In considering the evidence, it appears that there is some conflict as to whether the Carey field, adjacent to the partition fence, was inclosed on the south side of it adjoining another farm belonging to Mrs. Carey for a considerable distance east of the Schweitzer line. The weight of the evidence, however, does not support the contention of the plaintiff below that this line was fenced; and our conclusion is that this portion of the Carey fence line, while originally fenced, had been allowed to grow up in trees and bushes and had not been fenced for a considerable time before this controversy originally arose.

Who occupied the adjoining farm belonging to Mrs. Carey, or whether that portion of it adjoining the Carey home farm was fenced or unfenced, does not appear from the evidence.

█  Conceding that there may be cases where defects or even openings of some character in a fence would not necessarily prevent the application of the partition fence statute (*Moore v. Levert*, 24 *Ala.* 310), yet that Mrs. Carey's field, though consisting of improved land and occupied by her, was not inclosed by fences, within the meaning of the statute, when this controversy first arose, therefore, seems clear.

That being true, the maintenance of a partition fence would seem to be solely for the benefit of the plaintiff below and the statute invoked by him did not apply. The fence viewers, therefore, exceeded their authority when they made the award which constituted the basis of the judgment appealed from. By reason of this fact, it is unnecessary for us to consider the contention of the defendant below, that in order to come within the provisions of the

statute, the plaintiff below must show that the fields of both adjoining occupants were inclosed by *lawful fences* within the provisions of *Section* 3624, *Revised Code* 1915. See, however, *Draper v. Draper*, 3 *Harr.* 65; *Mooney v. Maynard*, 1 *Vt.* 470, 473, 18 *Am. Dec.* 699.

Nor is it necessary for us to consider the further contention of the defendant below that the partition fence built by Schweitzer was not a lawful fence under the statute, because of the use of one strand of barbed wire on the top of such fence. See, however, *Buckley v. Clark*, 21 *Misc. Rep.* 138, 47 *N. Y. S.* 42.

For the reasons above given, judgment is hereby entered in favor of the defendant below, the appellant.