J. Hampton Barnes, Jr., and Evelyn Barnes, His Wife, Plaintiffs, v. Edward Pleasanton, Defendant.

(*March* 27, 1950.)

RICHARDS, C. J., sitting.

*Max Terry* and *Abraham Hoffman* for the Plaintiffs.

*James L. Latchum* (of Southerland, Berl and Potter) for the Defendant.

Superior Court for New Castle County, No. 779, Civil Action, 1949.

RICHARDS, Chief Justice.

Under the common law rule, it was the duty of every person, subject to the exception of cattle being lawfully driven on the public highway, to keep his cattle on his own premises, by fences or otherwise, and if by reason of his failure to do so they strayed upon his neighbor's lands, they were trespassers and the owner was liable for any damage occasioned thereby. *Vandergrift v. Delaware Railroad Co.*, 2 *Houst.* 287; *Carey v. Schweitzer*, 3 *W. W. Harr.* 211, 134 *A.* 52.

When this country was first settled, there not being much land under cultivation, cattle were generally allowed to roam at large through the uninclosed woodlands. The question of fencing in many of the states, including the Province of Pennsylvania and the three lower counties on the Delaware, was regulated by statute. An act was passed at a very early date, applying to the territory which now constitutes the State of Delaware, and is found in Volume 1 of the Laws of Delaware, Chapter 70A, page 180. With certain changes which have been made from time to time, this act exists today and is found in the Revised Code of Delaware of 1935, Chapter 103.

The common law rule relating to fences, as well as the statutes passed in many of the states, including the Province of Pennsylvania and what now constitutes the State of Delaware, are fully discussed in *Carey* v. *Schweitzer, supra,* and it is not necessary to consider them further.

I am called upon in this case to determine the meaning of the fence law as it exists in this State today in Chapter 103 of the Revised Code of Delaware 1935.

Section 1 of the Act, being paragraph 4173 of the Code, defines what constitutes a lawful fence and prohibits the use of barbed wire for division fences except by mutual consent of the owners of the property divided by such fences. Section 2 of the Act, being paragraph 4174 of the Code, provides "If any horse, cattle, goat, sheep, or hogs, shall trespass on any grounds enclosed with lawful fence, the owner of such animal, so trespassing, shall pay such damages as shall be awarded by the fence-viewers; and any person having unruly horses, goats, sheep, hogs, or cattle, which break through lawful fences, shall, after notice thereof, be liable for double damages for any trespass committed by such animal, after such notice, to be awarded by the fence-viewers". Section 3 of the Act, being paragraph 4175 of the Code, provides "The Court of General Sessions shall annually appoint a sufficient number of persons in each Hundred to be fence-viewers who shall be the sole judges of the sufficiency of any fences, of the charges of making or repairing partition, or other fences, and how borne and of damages by animals trespassing."

It is Section 2 of the Act above quoted which provides that the owner of any horse, cattle, goat, sheep, or hogs, which trespass on any grounds enclosed with lawful fences, shall pay such damages as shall be awarded by the fence-viewers; but it must be noted that in order to make the owners liable for damages to be awarded by the fence-viewers, the trespass by such animals must be

upon grounds enclosed with lawful fences. And said Section further provides in dealing with the question of unruly animals that it must appear that they break through lawful fences in order to make the owner liable, after notice thereof, for double damages to be awarded by the fence-viewers, for trespass committed by such animals.

Neither Section 1 of the Act above quoted defining a lawful fence, nor Section 2 of the Act above quoted, making the owner of any horse, cattle, goat, sheep, or hogs, which shall trespass on any grounds enclosed with lawful fences, liable for damages to be awarded by the fence-viewers, make any provision for the appointment of fence-viewers to award said damages.

It is Section 3 of the Act above quoted, which provides that the Court of General Sessions shall annually appoint a sufficient number of persons in each Hundred to be fence-viewers, making said fence-viewers the sole judges of the sufficiency of any fences, of the charges of making or repairing partitions, or other fences, and how borne and of damages by animals trespassing. This Section of the Act making said fence-viewers the sole judges of the sufficiency of any fences, means lawful fences as provided for in Section 1 of the Act above quoted; or making them the sole judges of making or repairing partition fences as provided for in Section 4 of the Act, being paragraph 4176 of the Code, means lawful fences as provided for in Section 1 of the Act above quoted; or making them the sole judges of damages by animals trespassing means animals trespassing on any ground enclosed with lawful fences, as referred to in Section 2 of the Act above quoted. If this were not true, there would be nothing to guide the fence-viewers in determining what constitutes the sufficiency of any fence or under what circumstances they were to determine the damages caused by animals trespassing.

Reading these sections of the Act together, as we

are entitled to do in order to determine its true meaning, it seems clear that the fence-viewers provided for by Section 3 of the Act aforesaid, are only to determine the damages caused by animals trespassing on grounds enclosed with lawful fences.

The complaint filed in this case does not disclose that the plaintiffs' lands upon which the defendant permitted his bull to go, and cause damage to the plaintiffs' registered cows, were lands enclosed with lawful fences, consequently the question of awarding damages is not within the province of the fence-viewers.

In the case of *Draper* v. *Draper,* 3 *Harr.* 65, an action was brought before a Justice of the Peace to recover damages sustained by the plaintiff when the defendant's cattle broke down fences and destroyed three acres of corn. The Justice rendered judgment in favor of the plaintiff for $40 and a certiorari was taken to the Superior Court. The Court reversed the judgment holding that Justices had no jurisdiction without the intervention of fence-viewers in cases of trespass by horses, cattle, sheep and hogs breaking through fences and damaging crops. The record plainly states that the cattle that destroyed the plaintiff's corn, broke down fences, consequently the case does not support the defendant's contention. In speaking of the jurisdiction of the Justice of the Peace without the intervention of fence-viewers, in action of trespass by cattle breaking through fences and destroying or damaging crops, the Court said:

"The law on this subject is designed to fix a uniform rule in relation to the quality and sufficiency of fences, and to require of every man the use of due precaution and care to prevent trespasses by cattle. Its policy is not merely the protection of crops, but the encouragement also of the production of stock. It makes the owner of cattle liable for their trespasses in the enclosure of others, not as he would be liable for his own trespass, but only in

case the person trespassed upon and damaged has used due precaution to prevent such damage, by enclosing his crops with a post and rail fence or worm fence well staked and ridered."

In the case of *Vandergrift* v. *Delaware Railroad Co., supra,* the plaintiff's cattle escaped from the farm where they were pasturing and strayed upon the right of way of the Railroad Company for the want of required fences. Said cattle were run over and killed by defendant's locomotive and train of cars for which the plaintiff claimed damages.

One of the defenses made on behalf of the Railroad Company was that the general liability of landowners to fence, does not apply to railroad companies, for they were not bound to fence their railroads. The Court held that there was no general statutory provision in this State requiring railroad companies to fence their roads, and that the general fence law as contained in Chapter 57 of the Revised Code, was not applicable to railroads. The law referred to by the Court as contained in Chapter 57 of the Revised Code, meaning the Code of 1852, is practically the same law which exists today providing for the appointment of fence-viewers.

The case of *Carey* v. *Schweitzer, supra,* above referred to, reviews very thoroughly the law of this State with respect to fences including the Act providing for the appointment of fence-viewers as it existed at that time, which is the same Act which exists today, but held that the fence-viewers exceeded their authority in awarding damages because the maintenance of the partition fence in question was solely for the benefit of the plaintiff.

The motion to dismiss the complaint is denied.