William Henry WALL, Jr. and Hallie A. Wall, Plaintiffs-Appellees,

v.

The **MUTUAL LIFE INSURANCE COMPANY OF NEW YORK**, Defendant-Appellant.

No. 71–3329.

United States Court of Appeals, Fifth Circuit.

Sept. 21, 1972.

T. M. Smith, Jr., Hunter S. Allen, Jr., Atlanta, Ga., for defendant-appellant.

Stack, O'Brien & Neely, Edgar A. Neely, III, John G. Morris, Atlanta, Ga., for plaintiffs-appellees.

Before WISDOM, THORNBERRY and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This is a Georgia diversity suit for wrongful cancellation of a life insurance policy on the life of Dr. William H. Wall, Sr. Georgia law permits a suit for wrongful termination of a policy to be brought immediately by the insured or upon maturity of the policy. The alleged wrongful termination occurred in 1962, and no premiums were paid thereafter. After the termination the company maintained a reduced amount of paid up term insurance on the insured until early 1964. He died in 1967, and his beneficiaries sued, claiming damages for breach of contract, a statutory penalty for bad faith, attorney fees and punitive damages. After a nonjury trial the District Court entered judgment for the beneficiaries in an amount equal to the face of the policy and denied all other relief. The insurer appeals. We reverse and remand.

During life Dr. Wall had been the insured under two life insurance policies issued by Mutual Life, the $10,000 policy here in litigation ("the policy") and another policy significant only in an evidentiary sense. Dr. Wall was not always prompt in his payments. Available records for the period 1955–62 disclose at least eight instances in which his check tendered in payment of a quarterly premium on the policy was dishonored. Similarly, for the period 1960–64, available records disclose several dishonored checks tendered for premiums on the other policy.

The policy provided for a 31-day grace period after the premium due date during which if the premium were paid there would be no lapse. In addition, company practice was to allow an addi-

tional 15 days during which it would accept payment of the overdue premium without the necessity of formal application by the policyholder or evidence of insurability. At times the company refers to there being no "lapse" until 46 days expires, at other times to there being "automatic reinstatement" of the policy by payment without the extra 15-day period. In any event, the District Court resolved this semantical difference, if it is a difference, by its finding that the policy remained in force on condition that payment was made within the 46 days.

A quarterly premium on the policy was due June 28, 1962. According to an affidavit by a company official, an examination of its existent records disclosed the following events. At some time prior to July 30, on a date not known, Dr. Wall tendered a check in payment of the June 28 premium. The company infers that this was returned by the bank for insufficient funds on July 30, because a reversing entry was made on the company books on that date. It is unable to show by hard evidence that it notified Dr. Wall of the dishonor because its files covering the period were routinely destroyed after retention for two years. The implication is, however, that he was notified because on or about August 9, within the 46-day allowable period, the company received another check dated August 9 and in the same amount. It did not consider this unusual because of the number of times in the past in which it had received a worthless check followed by a good replacement check (or a postal money order), all during the 46-day period. It deposited the August 9 check, but on August 17, after the 46 days had expired, that check too was dishonored for insufficient funds. This check was not returned to Dr. Wall but sent to the home office or its permanent files to substantiate the lapse of the policy.

The plaintiffs' contention of the facts, made in a brief to the trial court but never the subject of evidence, is somewhat different. They claim that the check dated August 9 was the first and only check for the June 28 premium and that Dr. Wall was never given notice of its dishonor. The company affidavit states that because of the destruction of records it is unable to show that it notified Dr. Wall of this check's being dishonored.[1]

The trial judge made no findings as between the affidavit by the officer of Mutual Life and the contentions of plaintiffs—in fact there was no trial as such—because he concluded that under either set of circumstances the plaintiffs were entitled to recover.

The parties agree that Dr. Wall was sent a notice of the next quarterly premium due September 28. The back of the notice says: "Neither this notice nor any payment under it shall waive any lapse or termination for non-payment of a prior amount due." The Mutual Life affidavit explains that the billing cycle for premiums began 30 days before the premium due date, and since the August 9 check was not returned to the company until after August 17, it is possible that knowledge of its dishonor may not have reached the billing division in time to stop the sending of notice of the September 28 premium.

Dr. Wall sent a check for the September 28 premium. On October 29 the company wrote him as follows:

> Thank you for the check in the amount of $84.10. However, this policy lapsed for nonpayment of the June 28, 1962, premium, and has not been reinstated, so the check is being returned to you.

> Enclosed is the necessary form to be completed on the front side by you if you wish to reinstate the policy. The reverse side should be completed by a medical examiner in your city. When this has been done, please return to us and we will forward to our Home Office for their consideration.

---

1. That is, by notice prior to expiration of the 46 days. See discussion below of letter of October 29, 1972.

A return envelope is enclosed for your convenience. If the reinstatement is desired, please return your check with the completed form.

There is no evidence that Dr. Wall ever responded to this letter.

On November 7, 1962, Mutual again wrote Dr. Wall, stating *inter alia*:

We are very sorry your policy has lapsed because the premium has not been paid. If, however, you have paid the premium recently, and were notified of its acceptance, please ignore this letter. If that is not the case, perhaps you will wish to apply for reinstatement of your original contract. If so, please let us know immediately, so that we may tell you how that can be done.

The letter then advised that as a consequence of lapse the cash value had been applied to purchase paid up term insurance of $6,193 for one year and 250 days, expiring March 5, 1964. The letter instructed that it be attached to the policy as a record of the policy status and that Dr. Wall keep the company informed of his address while the term insurance was in force. Again, there is no evidence of any response from Dr. Wall.

Dr. Wall was not, however, out of touch with Mutual Life. The other policy was continued in force until his death and the benefits thereunder paid. With respect to it, in 1963 he availed himself of the 46-day period by submitting a cashier's check to cover a check which "might not clear," and in 1964 the company received a bad check from him and requested and received a replacement check within the 46 days.

■ The District Court misconceived the legal effect of the previous dealings between the parties.[2] We begin with the proposition that in Georgia "a check is not payment until itself paid unless explicitly taken with a contrary understanding," Kersh v. Life & Casualty Ins. Co., 109 Ga.App. 793, 137 S.E.2d 493, 496 (1964). More particularly:

It is a generally accepted rule that where a check is taken for an insurance premium, it will ordinarily be assumed that the acceptance was conditioned upon the check's being honored upon proper presentation, so that if payment is refused, and in the meantime the period in which payment could be made has elapsed the insurer may declare the policy forfeited for nonpayment.

*Id.*, citing Chandler v. American Cent. Life Ins. Co., 27 Ga.App. 810, 109 S.E. 919 (1921). The trial court in the present case considered, however, relying upon Veal v. Security Mut. Life Ins. Co., 6 Ga.App. 721, 65 S.E. 714 (1909), that the prior course of dealings between the parties, upon which Dr. Wall was entitled to rely, "amounted to a waiver of [the company's] right under the strict policy provision to lapse the policy for nonpunctual payment of premium," and that by its letters to Dr. Wall the company had, in effect, treated as paid each premium for which a dishonored check had been tendered and elected to proceed against the separate contractual obligation undertaken by Dr. Wall when he issued the check, and that the 15-day extension period only related to the satisfaction of this separate contractual obligation on the check.

*Veal* is not a case of reliance upon past course of dealings but of the insurer's actions taken with respect to a single check and tending to show that the check had been unconditionally accepted as payment. In that case all annual premiums had been regularly paid until the one in question, for which, on the last day of the grace period provided by the policy, a check was tendered and the company's premium receipt given. Subsequently the check was dishonored for insufficient funds, and thereafter the company, saying nothing about lapse or reinstatement, continued to demand of

---

2. Both parties assume, as did the District Court, that Georgia law governs, therefore, we do likewise.

the insured that he pay the check and the protest fee the company had incurred. Almost 60 days after the premium due date the company notified the insured his policy had lapsed and that it would entertain an application for reinstatement. The insured died five months after the due date. The court held that by retaining the check, allowing the insured to retain the premium receipt, and even after the grace period had expired demanding that the check itself be paid, the company had elected to treat the check as an enforceable liability of the insured and accordingly had lost its right to treat the policy as lapsed. Thus *Veal* turned upon what the company had chosen to do with respect to a single dishonored check and not upon loss of rights by repetitive dealings upon which the insured had relied to his detriment.[3]

We are cited to no Georgia case to the effect that by course of dealings alone the insurer can bind itself to acceptance of checks as absolute payment without regard to subsequent dishonor.[4] But, assuming that to be the law of Georgia, the prior transactions concerning the policy were not such a course of dealing as to overcome the "generally accepted rule" to the contrary referred to in Kersh v. Life & Cas. Ins. Co., *supra*. The company's available records \cover the seven-year period 1955–62, during which there would have been approximately 28 quarterly payments. They reveal correspondence concerning eight payments. The correspondence is of four types. Three letters from the company (August 1955, May 1956, May 1957) are subject to the construction that the company is treating as payment the check that has been dishonored. Each, after describing the check and its dishonor, said:

> Realizing that a mistake must have occurred somewhere along the line, your check has today been deposited. Won't you please see that it is honored when again presented for payment.

One letter (August 1958), after describing the dishonored check, said:

> It will be greatly appreciated if you will send us a bankable remittance by return mail as the days of grace expired July 28.

Four letters are inconsistent with unconditional acceptance. Each, after referring to the dishonored check, said:

> This means your premium due [date] still remains unpaid.

> Since the days of grace have expired, your policy has lapsed. However, we will be glad to reinstate it  . . without evidence of insurability  . . if you will send us a new check for [amount] by [date], and the insured is living.

> As you will surely want to preserve this valuable protection won't you please let us hear from you promptly.

These four letters were dated May 1955 (the earliest letter found); February [10], 1960, May 1961, and August 1961. The final three are the letters closest in time to the premium date of June 28, 1962.[5]

---

3. An alternative ground of decision in *Veal* was that even if the policy lapsed on the due date the insured was entitled to paid up or extended insurance for a period which had not expired at the time of his death, which coverage the company declined to honor. In the instant case the company amended the policy to provide for extended term coverage and notified Dr. Wall of what it had done, but he outlived the term of the coverage.

4. See McClure v. State Farm Mut. Auto Ins. Co., 113 Ga.App. 467, 148 S.E.2d 475 (1966), recognizing that a course of dealings whereby the company customarily accepts late payments can result in waiver of the requirement of timely payment.

5. There is one other letter, of a different nature, written February 3, 1960, prior to the letter of February 10 referred to just above. It notes that no premium payment has been received and suggests payment to preserve the protection, no later than a stated date (46 days from the due date). Specifically it says: "This offer expires on February 13, 1960 or on the Insured's prior death. It is not an

These transactions do not, as found by the District Court, establish a course of dealings under which the company waived its right to lapse the policy for nonpayment, treated as paid each premium for which a dishonored check had been tendered, elected to proceed on the contractual obligation of the check, and treated the 15-day extension period as applicable only to the satisfaction of the separate claim for breach of contract based on the check.

The last of the letters gently requesting that the check be honored when again presented was written more than five years prior to June, 1962. The last three letters sent were firm and unequivocal, stating that the premium was unpaid and the policy could be reinstated without evidence of insurability if a new check was sent. See National Ben. Life Ins. Co. v. Brown, 41 Ga.App. 741, 154 S.E. 469 (1930), in which the insurer made this statement by letter following receipt of a dishonored check: "[I]t will be necessary for you to make good this amount by post-office money order or cashier's check, in order that your contract may be continued in force . . . ." The court held this "plainly impl[ied] that the dishonored check had not been accepted and was not being held as in payment of the premium." *Id.* at 471.

At no time was there in this case the type of dealings that existed as to the single check in *Veal*, where the company, without referring to lapse or reinstatement, continued to demand payment of the check and its out-of-pocket expense for a protest fee, and even after the grace period had expired demanded that the check be paid.

Regardless of the form of the company's notice, in each of the eight previous instances funds or a replacement check were received before the 46 days expired. In no instance was a dishonored check replaced by another check that also was dishonored (either before or after 46 days had expired). A condition that a default be remedied within an allowable time may not be transmuted into a condition that it need never be remedied, or "remedied" in an illusory fashion by tender of another worthless check.

■ Thus, we conclude that if the August 9 check was a replacement for an earlier dishonored check, Mutual Life is entitled to judgment. If the August 9 check was the first check tendered for the June 28 premium, at least the following questions will arise: (1) did the prior transactions constitute a course of dealings, upon which Dr. Wall was entitled to rely, that if a check originally tendered in payment of a premium was dishonored the company would give him notice of the dishonor and the opportunity to correct the deficiency within 46 days of the due date without evidence of insurability; (2), if so, is it to be inferred that in this instance such notice was given; (3) if such notice was not given did Dr. Wall rely upon the absence of notice or did he have notice or knowledge from other sources that his check had been dishonored and in sufficient time to remedy his deficiency; and, (4), if he did not receive notice, and did rely, what is the effect of the letters of October 28 and November 9 in light of the following principle of Kersh v. Life & Casualty Ins. Co., *supra* at 496:

> Where on the other hand after notice of dishonor of the check the insurance company does not continue to claim liability but notifies the insured of the lapse which it couples with an offer of reinstatement not accepted by the insured, a verdict is demanded in favor of the company's contention that the policy has lapsed. Chandler v. American Central Life Ins. Co., 27 Ga.App. 810, 109 S.E. 919.

Reversed and remanded.

---

extension of the grace period and applies only to this payment."

Dr. Wall sent a check dated February 4; it was dishonored. The company then sent the letter of February 10, and on February 12 (within the 46 days) Dr. Wall sent another check which the company accepted.