Garrison Michael MOORE, Jonathan Eric Derryberry, Claire Lee Derryberry and Lawrence W. Wright, Plaintiffs,

v.

The TRAVELERS INDEMNITY INSURANCE COMPANY, Donald E. Harper Insurance Agency, Inc. and Donald E. Harper, Defendants.

Superior Court of Delaware,
New Castle County.

Heard Oct. 5, 1979.

Decided Nov. 6, 1979.

Robert K. Beste, Jr. of Biggs & Battaglia, Wilmington, for plaintiffs.

James W. Semple of Flanzer & Isaacs, Wilmington, for defendants.

STIFTEL, President Judge.

An automobile accident happened on October 11, 1973.

Garrison Moore, Claire Lee Derryberry and Jonathan E. Derryberry filed a lawsuit against Lawrence W. Wright for damages incurred in the October 11, 1973 automobile

accident. Travelers declined to defend the lawsuit for Wright. It denied his insurance was in effect on October 11, 1973. Default judgment was acquired against Wright in favor of plaintiffs Moore and the Derryberrys for $79,400. In this present suit, plaintiffs Moore and the Derryberrys try to obtain judgment for $79,400, the amount of the default judgment against Wright. All plaintiffs in this action move for summary judgment against the insurance company and insurance brokers claiming that Wright's liability policy was in force at the time of the accident.

Wright was insured by Travelers for the six-month period beginning August 16, 1972 and ending February 16, 1973, and for the next six-month period, February 16, 1973 to August 16, 1973. This action centers on the premium payment that was due on August 16, 1973 for the policy period that ran from August 16, 1973 through February 16, 1974.

Travelers says that a notice of premium due for this period was first mailed to Wright on or about July 17, 1973 and that when no premium payment was received as of August 31, 1973, Travelers claims that it sent an offer to reinstate the liability policy notice to Wright. Travelers' agent says that this notice informed him that his policy would be reinstated if payment was received by September 15, 1973. Wright says this notice requested payment by October 1, 1973 for reinstatement.

Wright says that he paid his premium by check dated September 10, 1973 and his policy was in force on October 11, 1973, the date of the accident. He says that Travelers requested that all premiums be paid by mail and that he personally deposited the check in the U. S. mailbox on September 10, 1973. Travelers claims that this check did not arrive at its Home Office until October 15, 1973 and that the policy, therefore, lapsed on August 16, 1973.

Wright's check dated September 10, 1973 was not honored for payment until its presentment on December 11, 1973. Payment of the September 10, 1973 check had previously been refused on October 18 and on November 2, 1973 for insufficient funds. Notwithstanding the dishonor of the September 10, 1973 check, Travelers sent an overpayment check to plaintiff Wright in the amount of his premium check because of the policy lapse.

Travelers began investigating claims arising out of the October 11 accident on October 17, 1973. On October 23, 1973, Wright met with Donald Harper, his insurance agent, in an apparent attempt to find out whether he was covered by Travelers on October 11, 1973. At this meeting, Wright indorsed the overpayment check which Travelers had previously sent to him over to Don Harper. Plaintiff Wright claims this overpayment check was accepted to "straighten up a 'payment mix-up' and to continue policy coverage through the date of the accident." [1] Travelers submits that this payment was accepted for the issuance of a new policy to commence on October 23, 1973.[2]

On October 25, 1973, Travelers issued a settlement check in the amount of $1,045.77 to plaintiff Wright for collision damages. Travelers maintains this payment was made by mistake. Wright claims payment was made with full knowledge of the circumstances.

On November 1, 1973, Travelers' Claims Representative wrote the attorney for plaintiff Derryberry stating, "We do insure Mr. Lawrence Wright". Travelers' Claims Representative again wrote Mr. Derryberry's attorney on March 5, 1974 informing him that the Travelers' policy was not in force at the time of the accident on October 11, 1973. On March 8, 1974, Wright was advised by Travelers that the October 25, 1973 payment to him was in error and reimbursement was requested. Plaintiffs Moore and Derryberry file their first suit on March 11, 1974. Subsequently, the default judgment which forms the basis of the instant action was entered against plaintiff Wright for $79,400. All plaintiffs move for

1. Plaintiffs' *Opening Brief*, 6. Deposition of Lawrence Wright, 95–96.

2. Defendant's *Answering Brief*, 4–5. Deposition of Donald Harper, 6–7.

summary judgment in this suit against Travelers.

Summary judgment is granted only where, considering the facts in a light most favorable to the non-moving party, there is no genuine issue on a material fact. *Shultz v. Delaware Trust Co.*, Del.Super., 360 A.2d 576, 579 (1976); *Matas v. Green*, Del.Super., 3 Storey 473, 171 A.2d 916, 918 (1961). The moving party must show that, on the unquestioned facts, he is entitled to judgment as a matter of law. *Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, Del.Super., 312 A.2d 322, 325 (1973).

■ Plaintiffs contend that Travelers' attempt to cancel Wright's insurance contract was ineffective because it did not comply with 18 *Del.C.* § 3905(a) and (c). Title 18 *Del.C.* § 3905(a) provides, *inter alia*, that:

".  .  . where *cancellation* is for nonpayment of premium, at least 10 days notice of cancellation accompanied by the reason therefor shall be given." (emphasis added).

If absence of coverage is not the result of a "cancellation", Section 3905(a) does not apply. This case concerns the nonrenewal for nonpayment of a premium—not a cancellation. 18 *Del.C.* § 3905(b) sets forth notice requirements in cases of "nonrenewals". It excepts cases of nonpayment of premiums. If this case involves a "nonrenewal" and not a "cancellation", then § 3905(b) by its own terms is inapplicable.

"Renewal" is defined in 18 *Del.C.* § 3903(a)(2) as follows:

" 'Renewal' or 'to renew' means the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term."

It is apparent that the General Assembly did not intend for the terms "nonrenewal" and "cancellation" to be synonymous. Indeed, throughout Chapter 39 of Title 18, the terms are referred to in the alternative.

"Cancellation", although not defined in the Code, is said to be "an affirmative action taken by an insurer to terminate an existing policy whereas a failure to renew concerns a policy that has ceased to exist. Couch, *Insurance 2d* § 68.6." *Carey v. Hunter*, C.A. No. 453, 1977 (decided May 31, 1979, Bush, J.). I am concerned here with a question of nonrenewal for nonpayment of premium. Thus, Sections 3905(a) and (b) are in terms inapplicable.

■ The sections of a statute should be read together in order to determine the true meaning of the statute. *Barnes v. Pleasanton*, 6 Terry 326, Del.Super., 73 A.2d 787, 797 (1950). It has been shown that Sections 3905(a) and (b) do not apply to a nonrenewal for premium nonpayment. Hence, the only logical and consistent construction to be given to the phrase "intention not to renew" in Section 3905(c)[3] must be intention not to renew for other than nonpayment of premium. This construction applies equally to the language "nonrenewal of a policy" in Section 3905(e). In short, the Section 3905 notice requirements do not apply when an insurer fails to "renew" a policy solely for nonpayment of a premium. Accord, *Carey v. Hunter, supra*. The law governing this case is in Section 3903(c). This section applies where an insurer fails to "renew" a policy "based solely upon the reason of nonpayment of premium". It mandates in part that:

".  .  . [t]he effective date of such renewed policy shall be the date of actual receipt by the insurer or its agent of the full premium payment due. The renewed policy shall not cover and the insurer shall not be liable for any losses occurring or claims which were sustained during the period from the end of the policy period until the date the full premium

---

**3.** Title 18 *Del.C.* § 3905(c) states that:

"The mailing of notice of cancellation or of intention not to renew to the named insured at his address last of record with the insurer shall be by certified mail."

Travelers admits that its notice to reinstate as of August 31, 1973 was sent by regular mail. (*Defendants' Answering Brief*, 10.)

payment was actually received by the insurer or its agent, regardless of whether or not such a loss or claim would otherwise fit within the coverage of such a policy."

It is unquestioned that payment of the premium was not effectuated until December 11, 1973. Plaintiff Wright's check dated September 10, 1973 had been dishonored for insufficient funds prior to its presentment and payment on December 11, 1973. Absent an agreement to the contrary, delivery of a check and acceptance of it is not payment until the check itself is paid. *Wall v. Mutual Life Insurance Company of New York*, 467 F.2d 321, 324 (5th Cir. 1972). *Bartleman v. Humphrey*, Supr.Mo., 441 S.W.2d 335, 342 (1969). Therefore, on the basis of unquestioned facts, payment was not "actually received" under Section 3903(c) until December 11, 1973.[4] Moreover, 6 *Del.C.* § 3–802(1)(b) does not alter this result. That Section provides, *inter alia*, that:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation . . . (b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation . . . ".

When read in conjunction with 18 *Del.C.* § 3903(c) and in the context of dishonor of a check given in payment of a premium obligation, the "suspended pro tanto" language of Section 3–802(1)(b) can only mean that the taking of a check for an obligation to pay the premium merely suspends that obligation prior to presentment and dishonor of the instrument. It does not enlarge the policy coverage period during the time prior to presentment. If the check is honored, then the date of "payment" under 18 *Del.C.* § 3903(c) by virtue of Section 3–802(1)(b) must relate back to the date the check itself was "actually received". If the check is

dishonored, as in this case for insufficient funds, the premium payment obligation is no longer "suspended" and the policy lapses as of the end of the previous policy period, 18 *Del.C.* § 3903(c), and not the date on which the instrument itself was dishonored. The insurer should not be forced to bear the risk of dishonor under these circumstances. *Olsen v. Preferred Risk Mutual Insurance Company*, 284 Minn. 498, 170 N.W.2d 581, 584–585 (1969). In sum, the policy period expired on August 16, 1973 and the policy thereafter lapsed. Couch, *Insurance 2d* § 31:44. Accord, 14 Appleman, *Insurance Law and Practice*, § 8144.

■ Next, I must resolve if Travelers, by acceptance of their check endorsed back to Travelers on October 23, 1973; its payment to plaintiff Wright of a settlement check in the amount of $1045.77 on October 25, 1973; its written acknowledgement on November 1, 1973 that it insured plaintiff Wright on the date of the accident; and failure to disclaim until March 5, 1974, waived its right to assert a lapse or nonexistence of a liability policy. A waiver is the intentional relinquishment of a known right, either expressly or by conduct which clearly indicates an intention to renounce a known privilege or power. It involves both knowledge and intent. *Nathan Miller, Inc. v. Northern Ins. Co. of New York*, 3 Terry 523, Del.Super., 39 A.2d 23, 25 (1944).

Regarding the October 23, 1973 endorsed Travelers check, the record before this Court is equivocal as to Travelers' intent in accepting the check. Accordingly, the question of whether Travelers intended to waive the alleged lapse in coverage is for the trier of fact to discern. See *Brooks Transp. Co., Inc. v. Merchants' Mut. Casualty Co.*, 6 W.W.Harr. 40, Del.Super., 171 A. 207, 212 (1933).

Travelers paid collision damage under the policy despite alleged lapse or nonexistence of policy. Normally, where an insurer " 'agrees upon a settlement which fixes the company's liability, then the whole matter

---

4. The only other date on which payment could be said to have been received is October 23, 1973. There is much controversy regarding the events of that date. Payment on that date would not have been timely.

is concluded, unless fraud or mistake has occurred.'" *Nathan Miller, Inc. v. Northern Ins. Co. of New York, supra,* 39 A.2d at 26. Travelers says that the $1045.77 payment was made by mistake. The requisite intention to establish a waiver cannot be found in mistake. Compare *Metropolitan Life Insurance Company v. Blum,* N.Y. Supr., 7 A.D.2d 488, 184 N.Y.S.2d 455 (1959), aff'd 9 N.Y.2d 954, 217 N.Y. S.2d 225, 176 N.E.2d 202 (1961), with *Boyd v. Travelers Insurance Company,* Tex.Civ.App., 421 S.W.2d 929, 932 (1967), and *Johnson v. State Farm Mutual Automobile Insurance Company,* La.App., 334 So.2d 478, 480 (1976), rev'd on other grounds, 342 So.2d 664 (1977). Certain facts in the record lend credence to Travelers' claim. For example, if the old policy was in force on October 11, 1973, then it would have been unnecessary to issue a new policy on October 23, 1973. Also, the payment was made after notice of lapse was allegedly sent to plaintiff Wright along with the overpayment check remitted to him.[5] Two days prior to the payment, Travelers' Underwriting Department had advised plaintiff Wright's agent, Don Harper, that the policy had lapsed for nonpayment.[6] The ambiguities arising from these facts on the issues of mistake and intent are better left for the determination of the jury.

Waiver implied from the circumstances is a question of fact dependent on the particular facts of each case. It is usually for the jury to decide whether a litigant's conduct evidences a conscious and voluntary abandonment of some right or privilege. *Nathan Miller, Inc. v. Northern Ins. Co. of New York, supra,* 39 A.2d at 25. "Summary judgment is inappropriate where, as here, the inference or ultimate fact to be established concerns intent or other subjective reactions." *George v. Frank A. Robino, Inc.,* Del.Super., 334 A.2d 223, 224 (1975). Cf. *American Casualty Company of*

*Reading, Pennsylvania v. Ford,* Del.Ch., 41 Del.Ch. 39, 187 A.2d 425, 429 (1963).

Travelers, by a letter on November 1, 1973, expressly acknowledged that it insured plaintiff Wright. It was not until March 5, 1974 that Travelers disclaimed this acknowledgement. A question of fact exists as to whether on November 1, 1973 Travelers "knew or by the exercise of reasonable diligence could have known" of the purported lapse in plaintiff Wright's coverage. *Brooks Transp. Co., Inc. v. Merchants' Mut. Casualty Co., supra,* 171 A. at 211. This is particularly true in light of both the uncertainty in the record as to when plaintiff Wright mailed the premium check dated September 10, 1973 and the subsequent dishonor of that check. Moreover, if the November 1, 1973 letter was sent by mistake, then this letter would not of itself warrant a finding of waiver. 16A Appleman, *supra,* § 8256 (1979 Supp.). A question of fact exists on this point.

Travelers had an obligation to assert the alleged lapse "at the earliest opportunity". *Brooks Transp. Co., Inc. v. Merchants' Mut. Casualty Co., supra,* 171 A. at 213. By waiting until March 5, 1974 to countermand its November 1, 1973 letter Travelers may not have acted in a timely fashion to void the policy. What was a reasonable time under these circumstances should be for the trier of fact. See *Shaw v. Massachusetts Mutual Life Insurance Co.,* Fla.App., 298 So.2d 183 (1974). Summary judgment must be denied for the reasons recited.

SO ORDERED.

---

5. Deposition of Lawrence Wright, 111.

6. Deposition of Donald Harper, 13. Travelers' Answers to Plaintiffs' First Set of Interrogatories, # 1.