**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4159
_____

WEYERHAEUSER COMPANY,
a Washington corporation,
Appellant

v.

DOMTAR CORPORATION, a Delaware Corporation;
DOMTAR PAPER COMPANY, LLC, a Delaware limited liability company
\_\_\_

On Appeal from the District Court
of Delaware
(1-14-cv-00024)
District Judge:  The Honorable Sue L. Robinson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2017

Before:  VANASKIE, RENDELL, and FUENTES, *Circuit Judges*

(Opinion Filed: January 18, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Plaintiff-Appellant Weyerhaeuser Company ("Weyerhaeuser") sold its fine paper business to Defendants-Appellees Domtar Corporation and Domtar Paper Company, LLC (together "Domtar") in 2007 for $3.3 billion (the "Sale"). This case stems from a contract dispute over which party is responsible for paying the workers compensation claims of Weyerhaeuser's former employees who had left prior to the Sale and thus had never worked for Domtar (the "Retired Workers"). Weyerhaeuser appeals the District Court's partial grant of Domtar's motion to dismiss and its grant of summary judgment in favor of Domtar. For the reasons explained below, we affirm.

## I.

As we write only for the parties, a summary of only the relevant facts is necessary. Shortly after the Sale closed in 2007, Weyerhaeuser and Domtar disputed which party was responsible for the workers compensation claims of the Retired Workers. In April of 2007, Weyerhaeuser tendered a workers compensation liability demand of over $13 million to Domtar, which Domtar rejected. Weyerhaeuser argued that under the Sale contracts, such claims were Domtar's responsibility. Weyerhaeuser also began to invoice Domtar for claims including payments to the Retired Workers. Nonetheless, Weyerhaeuser made the payments until the issue was resolved.

The parties engaged in negotiations regarding various post-closing disputes. Their discussions resulted in a meeting in Montreal in September 2008 where Domtar took the

2

position that under the Sale contracts, it was not liable for the Retired Workers' claims.[1] Weyerhaeuser preliminarily agreed, but stated it would need to discuss the matter internally more fully.

Following these discussions, Weyerhaeuser adjusted its own accounting records to show a decrease in income of over $9.2 million to reflect that Domtar would not be covering the cost of the Retired Workers' claims. Weyerhaeuser then provided Domtar new invoices reflecting that Domtar was not liable to Weyerhaeuser for claims for Retired Workers. The error with the initial invoices was confirmed by the general counsel of its Canadian subsidiary, Anne Giardini, in a letter to Domtar. The letter, marked "WITHOUT PREJUDICE" in the header on the first page, stated "we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar." For three years, Weyerhaeuser continued to invoice Domtar for the claims of only these continuing employees. In 2012, Weyerhaeuser realized its mistake in interpreting the contract and began tendering the workers compensation claims of Retired Workers to Domtar. Domtar rejected this demand and the litigation ensued.

Weyerhaeuser commenced this action for breach of contract in the District Court for the District of Delaware to recover the money it had paid.[2] On Domtar's motion to

---

[1] The Sale was executed in two contracts; the Amended and Restated Contribution Agreement (the "Contribution Agreement") is the focus of this appeal.

[2] Diversity jurisdiction existed in the District Court under 28 U.S.C. § 1332(a). Weyerhaeuser is a citizen of Washington and Domtar is a citizen of Delaware. The amount in controversy exceeds $75,000. We have jurisdiction to review the District Court's final decision under 28 U.S.C. § 1291.

dismiss, the District Court held that Domtar was contractually responsible for the workers compensation claims of the Retired Workers. It further ruled that the statute of limitations barred Weyerhaeuser from seeking recovery for Retired Workers' workers compensation claims that accrued prior to January 13, 2011.[3] Following discovery, Domtar moved for summary judgment arguing that Weyerhaeuser had waived its contractual rights in the payments it had made and that it had acquiesced to Domtar's interpretation of the contracts. The District Court agreed and granted its motion for summary judgment. This appeal followed.

## II.

We address four issues on this appeal, stemming from both the District Court's July 2014 opinion denying in part and granting in part Domtar's motion to dismiss, and its August 2016 opinion granting Domtar's motion for summary judgment. They are: (1) whether a signed writing was required to waive any rights under the Sale contracts; (2) whether Weyerhaeuser intentionally waived its rights when it acted in accordance with Domtar's incorrect interpretation of the Sale contracts; (3) whether—assuming Weyerhaeuser did waive its rights—it retracted this waiver in 2012; and (4) whether the parties' agreements to resolve their disputes concerning workers compensation claims at a later date tolled the statute of limitations.[4] These issues will be addressed in turn.

---

[3] Under Delaware law, breach of contract claims are subject to a three-year statute of limitations. DEL. CODE ANN. tit. X, § 8106(a).

[4] Given that we will affirm the District Court's decision regarding waiver, we need not address whether the District Court properly determined the acquiescence issues as they are moot.

## 1. Signed Writing Requirement under the Sale Contracts

Section 9.10 of the Contribution Agreement states that "[n]o provisions of this Agreement . . . shall be deemed waived, amended, supplemented or modified by any party, unless such waiver, amendment, supplement or modification is in writing." Weyerhaeuser asserts that, contrary to what the District Court found, this clause means that it could not have waived or acquiesced to any loss of contractual rights against Domtar absent an additional writing.

The District Court properly noted that under Delaware law "contract provisions deeming oral modifications unenforceable can be waived orally or by a course of conduct just like any other contractual provision."[5]  Weyerhaeuser now argues, however, that Domtar cannot establish Weyerhaeuser's intent to modify Section 9.10 with the required "specificity and directness as to leave no doubt of the intention of the parties to change what they had previously solemnized by formal document."[6]  This is not the case.  Such intent is easily established by Weyerhaeuser's conduct subsequent to the Sale.[7]

The facts here establish that following Weyerhaeuser's adoption of Domtar's position regarding liability for the Retired Workers' claims, Weyerhaeuser engaged in a

---

[5] *Eureka VII, LLC v. Niagara Falls Holdings, LLC*, 899 A.2d 95, 109 n. 26 (Del. Ch. 2006) (citing *Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219 (Del. Ch. 2000)).
[6] *Continental Ins. Co.*, 750 A.2d at 1230.
[7] The same facts which establish Weyerhaeuser's waiver of its underlying substantive rights against Domtar also establish its clear intent to modify the Section 9.10 writing requirement.  Because Weyerhaeuser's conduct clearly establishes its intent to waive its rights regarding the Retired Workers, something it could not do absent modifying Section 9.10, that same conduct must necessarily be understood to serve as a modification of Section 9.10's writing requirement.

course of conduct clearly establishing an intent to waive its rights under the contract.[8]

The District Court was correct in stating that "[o]ver the course of several years, Weyerhaeuser's legal, finance, and human resources departments engaged in a continuous, conscious, and voluntary course of action consistent with Domtar's interpretation of Section 2.03(a) and inconsistent with its own rights."[9] Viewing these facts together, Weyerhaeuser's conduct leaves no alternative but to conclude that it had specifically and directly intended to waive its rights.[10] Thus, we will affirm the District Court in its holding that Weyerhaeuser waived the signed writing requirement of the Contribution Agreement.

---

[8] First, Weyerhaeuser began adjusting its own internal accounting records so as to reflect that Weyerhaeuser no longer expected Domtar to pay for the Retired Workers' claims. Second, Weyerhaeuser communicated to Domtar that it was accepting Domtar's interpretation of the contract, specifically the definition of "transferred employee[s]." Third, Weyerhaeuser employees discussed changing invoices sent to Domtar to reflect that Domtar would only be responsible for the claims of employees who worked for Domtar; in other words, not the Retired Workers.

[9] *Weyerhaeuser Co. v. Domtar Corp.*, 204 F. Supp. 3d 731, 743 (D. Del. 2016).

[10] In any event, here there was indeed a signed writing waiving said rights, namely Giardini's November 26 letter. This letter confirmed that the required authorities at Weyerhaeuser had agreed with Domtar's interpretation of the liability for Retired Workers. Weyerhaeuser argues now, as it did before the District Court, that Giardini's use of a "WITHOUT PREJUDICE" label on the letter forecloses any reliance on the contents of the letter. The District Court disagreed for two main reasons. First it found that Delaware courts disfavor such reliance on boilerplate markings. *Weyerhaeuser*, 204 F. Supp 3d at 742-43 (citing *Balin v. Amerimar Realty Co.*, No. 12896, 1995 Del. Ch. LEXIS 41, 1t *24-26 (Del. Ch. Apr. 10, 1995)). Second, it noted that while some sections of the letter lend themselves to being understood as a negotiating point, the discussion of the liability for the Retired Workers read more in terms of a confirmation of Domtar's interpretation as discussed at the Montreal meeting. *Id.* at 743. Thus, the District Court concluded that "the court has no legal basis to hold that a single, boilerplate disclaimer on Giardini's November 26 letter is sufficient, by itself, to outweigh Weyerhaeuser's multitude of oral and written statements and years of conduct consistent with Domtar's interpretation of Section 2.03(a)." *Id.* We agree with the District Court's conclusion.

## 2. Weyerhaeuser's Waiver of its Rights

Weyerhaeuser also argues that the District Court erred in finding waiver because there was no evidence of intent to waive its substantive rights against Domtar and because it had no knowledge of its rights. Delaware law defines waiver as "the voluntary and intentional relinquishment of a known right."[11] As discussed above, the District Court did not err in determining that Weyerhaeuser intended to waive its rights against Domtar; Weyerhaeuser's actions clearly demonstrate such intent. Thus, we turn to analyzing whether the District Court properly found that Weyerhaeuser had knowledge of its rights.

Weyerhaeuser relies chiefly on *Moore v. Travelers Indem. Ins. Co.*, a case the District Court already properly disregarded as distinguishable.[12] While the *Moore* court did state that "[t]he requisite intention to establish a waiver cannot be found in mistake," the mistake made there was the erroneous one-time issuance of a check for just over $1,000.[13] Here, by stark contrast, the "mistake" was a multi-year course of conduct. We agree with the District Court that this case is closer to *Julian v. Eastern States Construction Serv., Inc.* In *Julian*, a contract provision was held to be waived where there was "at least an arguable basis" that the waiving party—which argued it lacked the knowledge required for waiver—was aware of its rights under the contract.[14] Here,

---

[11] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus.*, 871 A.2d 428, 444 (Del. 2005) (citation omitted).
[12] 408 A.2d 298, 302 (Del. Super. 1979).
[13] *Id.* at 301-02.
[14] No. 1892-VCP, 2008 Del. Ch. LEXIS 86, at *54-*55 (Del. Ch. July 8, 2008)

Weyerhaeuser was—for years—clearly aware that there was "at least an arguable basis" that Domtar was obligated to pay the claims of the Retired Workers. Indeed, it had initially argued as much before accepting Domtar's position to the contrary. Accordingly, we agree with the District Court that Weyerhaeuser waived its substantive rights.

### 3. Retraction of Waiver

Weyerhaeuser next argues that, assuming it had waived its rights, it had properly retracted its waiver by 2012, making Domtar liable for the Retired Workers' workers compensation claims beyond that point. The District Court held that the waiver had not been properly retracted "because Weyerhaeuser unjustifiably delayed in giving reasonable notice to Domtar" of its intent to retract its waiver.[15]

On appeal, the parties dispute the applicable law regarding the retraction of waiver.[16] Because Weyerhaeuser cannot establish that the facts here satisfy the *Amirsaleh* test for retraction of waiver, we need not address the interplay of these cases. In *Amirsaleh*, the Delaware Supreme Court stated that while retraction of waiver is typically prohibited, "the waiving party may retract the waiver by giving reasonable

---

[15] *Weyerhaeuser*, 204 F. Supp. 3d at 745.

[16] Weyerhaeuser argues that the Delaware Supreme Court established a test for the retraction of waiver in *Amirsaleh v. Bd. of Trade of the City of New York* and that the District Court erred by considering the timelines of the retraction. 27 A.3d 522 (Del. 2011). In contrast, Domtar asserts that the section of *Amirsaleh* relied upon by Weyerhaeuser was dicta and that the operative rule should then be the one announced in a previous Delaware Supreme Court case, *Harleysville Ins. Co. v. Church Ins. Co.*, where it was held that "[o]nce a right is waived, it is gone forever." 892 A.2d 356, 364 (Del. 2005).

8

notice to the non-waiving party before that party has suffered prejudice or materially changed his position."[17]  Here, it cannot be said that Weyerhaeuser gave reasonable notice.  As the District Court properly noted, Weyerhaeuser waited over three years from when it became aware of the facts necessary to discover the interpretive mistake the parties had made.[18]  Accordingly, we affirm the District Court in its determination that Weyerhaeuser did not properly retract its waiver.

### 4. Tolling of the Statute of Limitations

Finally, Weyerhaeuser argues that the District Court erred in its July 2014 opinion by dismissing Weyerhaeuser's claims that accrued prior to January 2011.  Weyerhaeuser claims that the District Court failed to properly account for two contracts in which Weyerhaeuser and Domtar agreed to toll the statute of limitations.  Domtar opposes this, asserting that not only do the contracts Weyerhaeuser points to not constitute an agreement to toll the statute of limitations, but that neither contract even mentions the statute of limitations at all.

While Weyerhaeuser is correct that Delaware law allows for tolling agreements, for such an agreement to be effective it must be just that—an agreement.  Neither contract Weyerhaeuser points to can reasonably be understood to be an agreement to toll the statute of limitations.[19]  Moreover, the case Weyerhaeuser cites to in support of its

---

[17] 27 A.3d at 530.
[18] *Weyerhaeuser*, 204 F. Supp. 3 at 744.
[19] Weyerhaeuser's brief refers to both the Settlement Agreement, effective December 21, 2009, and the Agreement to Terminate Certain Health and Welfare Transition Services, executed on February 28, 2013.  Weyerhaeuser Br. at 34.

assertion that the contract did toll the statute of limitations, *E.I. du Pont Nemours & Co. v. Medtronic Vascular, Inc.*, is entirely inapposite.[20]  There, the contract asserted to have tolled the statute of limitations was literally referred to as the "Tolling Agreement" and it specifically stated that "the running of any statute of limitations . . . [is] hereby tolled."[21]  Here, by contrast, there are no references to the statute of limitations in either agreement. Accordingly, we affirm the partial dismissal.

### III.

For the foregoing reasons, we affirm the District Court's order granting in part Domtar's motion to dismiss and the District Court's order granting Domtar summary judgment.

---

[20] C.A. No. N10C-09-058, 2013 Del. Super. LEXIS 9 (Del. Super. Ct. Jan. 18, 2013), *as corrected* (Jan. 29, 2013).
[21] *Id.* at *29.